Mr. Kline. Good morning Judge Gregory, Judge Niemeyer, Judge Agee. Thank you for the opportunity to be here today. I'm John H. Kline of the Norfolk firm Montagna-Kline Camden, LLP. I'm here today on behalf of Russell Moody. Mr. Moody was a long-time shipyard worker. Unfortunately, he was injured and underwent shoulder surgery. His case brings to the court's attention the definition of disability in section 210 of the Longshore Act, which says disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment. The timeline here is that Mr. Moody, on August 1, 2011, contacted the employee benefits office and requested retirement. Under the applicable procedures, the retirement would be effective 90 days later. He was working in the transportation department at the shipyard and he was working the second shift. He didn't like the second shift. He'd always been on the first shift. But because of restrictions from a back injury, that's where they had work for him and so that's where he showed up to work. He didn't like the idea and he put in his retirement papers. During the interim, in September of 2011, he suffered a right shoulder injury. There's no doubt he got hurt at work. There's no doubt the shipyard was responsible for that injury. And then the retirement did become effective November 1, 2011. December 13, 2011, just shortly after the retirement became effective, he underwent surgery on the right shoulder by Dr. Coleman, who certified him to be totally disabled during a period December 13, 2011 through February 16, 2012. He requested compensation for temporary total disability during that time. The shipyard paid for the surgery, didn't dispute medical treatment, but did not agree to pay for compensation for temporary total disability. There was a hearing before... That sounds like a little bit of an inconsistency, is it? I hope you won't see it that way, Your Honor. I mean, the operation was after he retired. That's true. They paid for the operation. That's true. But his incapacity was after he retired, but they didn't pay for that. That's true. Okay. Now, the administrative law judge of the Department of Labor who heard the case, in his decision, tracked the language of Section 210 about disability, meaning incapacity because of injury, to earn the wages which the employee was receiving at the time of the injury in the same or other employment. And he awarded benefits for that period of time that Mr. Moody was unable to work from the shoulder surgery. The benefits were... Your Honor, you tell me what I'm reciting as incorrect. He was injured and he continued to work until he retired. Yes, that's true. So then he had this operation afterwards and he was found to be disabled for a certain period of time. Yes, that's true. But didn't your client also represent that he had no intention of working during that time? True. That's what brings us to what does the definition of incapacity because of injury mean. So it wasn't that he was looking for a job after he retired or that he lost a job, but I take it that he has represented that even if he had been offered a job, he would not have worked. No, there's not any evidence of that, I don't believe, Your Honor. It is true he didn't look for work and he didn't have any intention of looking for work. But what brings us here today is the question of incapacity because of injury. Clearly he was incapacitated from the date of the surgery until the doctor released him to a period of then light-duty work for the shoulder. Now, if he wasn't going to work and he didn't have any intention of working during that period, I don't understand what the compensation would be for. Incapacity. And this is what the Benefits Review Board decision was based on. The board said incapacity was because he retired, that he was incapacitated from his shipyard employment because he retired. Not so. He wasn't exercising his capacity, but the day after he retired and the day before this shoulder surgery, he had the capacity to work as a shipyard driver or he could have worked as a driver anywhere else in the economy. He wasn't incapacitated. Is the core of your argument, I gather, that had he been working and, say, injured his shoulder, and then two months later still working, he had this operation, the doctor looked at it and said, I see a torn meniscus or whatever, and I have to operate and do it, and he lost two months and then continued working. In that case, there's no question the two months would be compensated because of his injury. Let me make sure I understand. Is it that he remained a shipyard employee? Yes, yes. Yes, sir. There wouldn't have been any question about that. So the linkage between the operation, which is later, and the injury, the operation later is part of the injury. Yes, absolutely. And so your argument is, I gather, that the injury occurred during work and that the operation was part of that injury. Yes. Because it was caused by it. Everybody seems to agree that. Yes, that's true. And that during the repair, during the operation, everybody seems to agree he was totally disabled for two months. He could not have worked even if he'd wanted to. Yes, exactly, Your Honor. So your argument is basically that the injury during work is defined by that two months' capacity because it was caused by it and that the incapacity was created by the injury, not because of his retirement. Exactly right, Your Honor. Yes. Looking exactly back at the statute, incapacity because of injury. I think I understand it. Thank you, Judge. So what it is fair to say should not be the case is that retirement is incapacity. That's what the board, the Benefits Review Board, said, that Mr. Moody caused his own incapacity by retiring. And my point on his behalf is no, not so. He could have worked, not that he chose to. He could have worked, but he was retired. Now, in his case, he was not working elsewhere. But what if he had? Your argument is that his retirement didn't cause his incapacity. The injury caused his incapacity. Yes, Your Honor. And the retirement was collateral. Exactly right. Yes, Your Honor. I understand. He drew retirement benefits based on 45 years. He was a very successful shipyard worker. He drew retirement benefits based on 45 years and what benefits he was due under the pension plan created under the collective bargaining agreements. Your Honors have heard collective bargaining agreement talk all morning. Fortunately, this one's ancillary. This one looks at the Compensation Act and what does it say. Now, if, in fact, incapacity looks at capacity to earn the wages, then it's incorrect, as the Board ruled, to say the retirement created the incapacity. And I look at a lawyer, for example. If I decided to retire from my law firm, and if my partners are listening, I don't intend to retire anytime soon, but if I did, I would still be a licensed attorney retired from Montagna, Kline, Camden. But I had the capacity, would still have the capacity to work as an attorney. I could work for myself. I could work for another law firm. I could work for a government agency. I have the capacity to work as an attorney. But if, like Mr. Moody. But I think you give away a little too much emphasizing that argument because I believe, if I understand your argument, is he's compensated for an injury, a work-related injury. Yes. And the injury is measured by his incapacity. And in this case, the fact that the incapacity occurred later is irrelevant, as long as it was caused by the injury. Exactly true. So a guy's working in the shipyard, and he lifts something heavy. And it tweaks his back, but he keeps working for two or three weeks. And then they see that there was a slipped disc, and he has an injury. That injury still relates back to that injury. That's the definition of the injury. Yes, Your Honor. The disability caused by the injury, which is the incapacity. So your argument, it's irrelevant where he's actually working or not because it's act-focused on incapacity, not on lost wages. Yes, that's true, Your Honor. And this court, in the Horde case from 1999, mentioned by the employer in its brief, had some important language where the court then said the act, the Longshore Act, provides compensation not for the injury itself, but for the economic harm suffered as a result of the decreased ability to earn wages. Now, when was the decreased ability to earn wages? As Your Honor, Judge Niemeyer has said, when the surgery was done, when he clipped his back. I'm trying to understand your position. You're basically the causation of the incapacity wasn't contributed to by his retirement, or whether he was working or not. The incapacity was caused by the injury. Yes, Your Honor. And I understand that position, and it's sort of counterintuitive because he's no longer working, and the idea is to compensate, but it does measure the injury when it occurred, even though he continued working, maybe ill-advisedly, but a lot of injuries, like back injuries and discs, don't manifest themselves for a while. And apparently his, I don't know, what was it, a torn rotator cuff? Yes, Your Honor, a torn rotator cuff. And the same way it was a slipped disc that can be initially a partial tear, work into a full tear. By the time the doctor saw it, it was a full tear and needed surgery. So I'll simply say that I rely on the arguments we've made in the brief, as well as the comments I've made today, and I thank the Court. Thank you, Mr. Klein. Mr. Hedrick. Peter. May it please the Court, I'm Christopher Hedrick from the firm of Mason Mason Walker and Hedrick, and I represent the employer, Huntington Hills Incorporated. I'm going to just jump to what's going to be my primary argument, which I think counsel is trying to make, which is I think what Mr. Moody and his counsel would like for you to do is to adopt a definition of disability that is not in the Longshore Act, and that definition is impairment to work. We could sit here and talk about disability for hours. No, we're talking about incapacity. We are talking about incapacity. Not disability. Correct, Judge. But the definition of disability, which is why you are paid wages under the Longshore Act, says there's three components. Disability is an incapacity because of injury to earn wages. Your incapacity has to be because of your injury to earn wages. Let me just ask you while you're at this point, just so that we don't have a distraction on this, do you agree that his operation was caused by his injury? Yes. And you also agree that his operation caused him to be disabled for two months? We agree that. Incapable of working. Incapable of working. That's correct. Incapable of working. So the injury occurred, and we agree the injury occurred while he was working. That's correct. Okay. So your argument is that if he were working and continued working and had the operation, he would get benefits for the two months. That's correct. But since he retired, you're saying he was injured during work but then had the injury somehow because he retired it changed the nature of the injury? Because the nature of the injury is still the two-month incapacity. The issue, Judge, is when you look at the definition of disability and you look at the purpose of the Longshore Act, and Your Honors have touched on this, the purpose of the Longshore Act is to actually compensate injured workers for loss of actual earnings. It doesn't say that. That, to me, is where I saw the briefs at cross purposes. And it seems to me you've got to stick with the definition that it says disability refers to an incapacity to earn wages. And it doesn't say the loss of actual wages. Disability isn't the loss of wages. It's the incapacity. And so that you interpret his injury. I mean, if he had his injury and that day he couldn't lift anything more, it was totally torn, and he went out for the operation, you'd have no trouble with that. That's correct, Your Honor. Even if the operation continued past his retirement, you'd pay for the whole thing, wouldn't you? That is correct, Your Honor. Okay. So here there's a delay in the operation, but everybody agrees that the operation was caused by the injury. So the measure of the injury, the compensability of the injury, is defined by his incapacity to work, not whether he worked. Well, Judge, I understand what you're saying, and it is difficult to parse it out. But in this case it's difficult because the actual incapacity that is being described because of the surgery happens relatively shortly after this injury occurs. What the employer is saying, which the board held, was that at the time he underwent this surgery, his wage earning capacity is zero. Why? Because he's no longer working. But that doesn't affect his capacity. He just chose not to work. That's the important point, Your Honor. No, but that didn't go to his capacity. It's irrelevant to his capacity if you're looking at the word capacity. In other words, capacity goes to his ability. Well, based on the case law, Your Honor, if someone says I am retired and I do not intend to seek work, they are no longer earning any wages. So what are we compensating them for? Injury. Injury. But the Longshore Act consistently has said that in Rambo I, Metro Machine v. Rambo, says the statute, let me get down to the right part, these two sections make it clear that compensation as an initial matter is predicated on loss of wage earning capacity and that such compensation should continue only during the continuance of partial disability. The board, in this instance, said claimant did not establish that either his work-related back or shoulder injury prevented him from working as a driver at the time of his retirement. October 31, 2011, claimant did not establish that he lost any wage earning capacity because of his work injuries. In fact, claimant's retirement had already resulted in his complete loss of earning capacity at the time of his shoulder surgery. So is it your view under the statute that post-retirement, even though he had the capacity to work, which was interrupted by this period of disability, that he actually had to have been working at that time? I think that would be the legitimate argument. This case is very fact-specific, Your Honors. There are not many cases that come forward where the person has said, I'm going to retire because I don't like this position they put me in, and then between the time he retires, the time he puts in for his retirement, which is August 1, and October 31, 2011, he has a second injury. And so he freely admitted his retirement was, although he tried to argue at some point that it was in some way related to his back injury in 2001, the administrative law judge found clearly in the record, which I think is at 104, that his retirement was, in fact, voluntary. It was, but let me ask you this. Going back to my hypothetical, he has this injury during work. It's a work-related injury. And he immediately goes into operation and loses two months. He's disabled for two months, can't work for two months. Correct. Two weeks later after the injury, he retires. That didn't affect his capacity, his retirement. He still was incapacitated because of the injury. And it started on the day of his injury and lasted two months. Now, your argument has to be that that's different from this man's case, where he had his injury during work, but his incapacity was delayed because it kept hurting and he didn't discover it, but he had his operation later. And you're saying because he had to have his operation later, he didn't lose his capacity to work? Well, he's not losing any wages. He's not losing wages, but he lost capacity. The case law is reasonably clear in that we're not talking about hypothetical. No, no. I'm talking about statutory interpretation and the Supreme Court's cases. Right. Where they talk about they focus exactly what you said on the ability to work. That's correct. On capacity. In this instance, and this is consistent with what this Court previously held in Brooks, that when you have some factor that is changing the individual's wage earning capacity, that's not connected to the work injury. That's the key language. I know, but you just used the word imprecisely. You said the retirement is affecting his wage earning capacity, and it doesn't. Well, if we measure wage earning capacity. It affects his wages, and he doesn't get any more income. That's correct. But it does not affect his capacity, and the injury is defined by the statute, by the loss of capacity or the presence of capacity. Now, if he continued working and never had a problem again, in other words, how about if it came up three years later that they said, you know, you've had a problem. The scarring is getting bad. You're going to have to have an operation. There's a legitimate argument that that operation was not the injury, that it's a later development by intervening causes and using it. He threw the football too much and stuff like this. But there's no question in this case that the two months where he could not have worked, the loss of capacity was caused by the, was a result of the injury. And the fact that the incapacity occurred later during his retirement rather than during his work, I can't see what the difference would be. You say he'd be compensated to occur during his work, but he's not compensated to occur afterwards, even though in both cases the injury occurred during work. Well, I think the distinction, Judge, is when he is still working and earning wages and he is unable to work, he is actually suffering a loss. There is a loss. There is a wage loss, no question. And he doesn't have a wage loss during retirement. Once he retires? There's no wage loss. He's already at zero. Yeah. How do you compensate him? Intuitively, your argument is just super, I must say. But wage loss is not how they defined it. They defined, they said incapacity is the injury, disability. And then they say you measure the incapacity by the wages, which is not that he lost at the time he had the operation, but at the time he was working. That's correct. Yeah. And so that's another indicator that they're really defining that injury on that date to be two months incapacity, which even though it happened to occur later, it was irrelevant to his retirement. Your argument is he did not lose wages because he was retired. And by not losing wages, it's no foul, no harm. If he was still working, he loses wages and he gets compensated. But that focuses on the loss of wages and not capacity. Well, and I understand that, Judge. I don't understand your argument because I think it's the most intuitive. And it's consistent with the board's holdings in Hoffman.  What would happen in this case if the worker, after his operation during this period of disability, had gone to a new employer and applied for a job, which they would give him, but he couldn't perform it until the disability period was up? Would you say he's entitled to compensation in that circumstance? I think if there were evidence, Judge, which would be a different situation from what we have here, where this gentleman said, I consider myself retired. There's no evidence that he was going to do that. If that were the case, that there is some evidence that this person, in fact, is intending to work, that their, quote, voluntary retirement is not a, quote, real retirement. It's a change in career. Then, yes, there's an argument that they should be compensated. You could extend that argument out and say if you have an individual that technically retired from the shipyard, took a higher paying job. Well, now you're gauging capacity on whether he intends to work, not on his capacity. Well, I thought it's an objective standard to determine whether he's  Well, I'm trying to respond to Judge Aitken's question. No, I am too. I mean, I think that's a good question. If there was actual evidence that there was going to be a wager. He had the operation, and a month after he had the operation, say that two months it takes to recover. A month afterwards, he said, I'm getting tired. I'm sitting at home. There's too much television. I'm going to work. And he goes and applies for a job, and the guy says, you can't work because you've still got that shoulder. You don't pass our physical. And your argument, your concession is that there he has lost wages. Those are facts we don't have in front of us. No, we don't have those. Right. But I don't know if that makes any difference, because now you're determining incapacity based on his intent to work, and not on his physical condition. Well, I think that goes, actually, Judge, I think that goes beyond intent, and actually you can document that this is an individual that is going to work. This is not a person. In this case, that's not the facts that we have in front of us. The definition here in the statute is disability means incapacity because of injury. And he was incapacitated in that he was unable to earn wages during the disability period. Is that correct? That's correct, Judge. It says disability because of injury. That's the key phrase, because of injury. The requirement that there be an active pursuit of employment during the period of incapacity. What's your basis for that? Well, Judge, let me back up a minute, and I'll go through the analysis, which you're all very familiar with, that in the instance when someone is to prove that they have a loss of wage earning capacity and that it's due to a work injury, the employer can then come back and show evidence of suitable alternate employment if they are working in a light duty capacity and actually earning wages. So at the time that Mr. Moody retired, there was an established wage earning capacity of the light duty job that he was working for his 2001 back injury that he had restrictions on. He agrees he was working within his restrictions. So he's working that job. The case law would establish that that wage earning capacity would continue, but for some action that he takes, which is he retires. So then it ends. You said that sentence very quickly. You said his wage earning capacity would change. His wage earnings would change, but not his wage earning capacity. He could still, if he chose to, go back to work. It's possible, but there's no evidence of that. Yeah, so his capacity would not be affected because he retired. Well, capacity is, you know, wage earning capacity is kind of a loaded phrase. It is. It means the ability. It means the ability to work. You quoted that. The Longshore Act, and I think all the case law is clear, that the conception of disability includes some economic component, some actual analysis of earnings or ability to make earnings. And what the board said is if you voluntarily retire, you terminate those alternate suitable employment that you have from your employer, your wage earning capacity is now zero. That's what the board has held based on the case law, based on Hoffman. I would submit to the court that this conception of impairment equals disability is not. What's the impairment word from? I believe the. I thought he was injury. Well. He sustained a work-related injury. That's correct. Which caused incapacity, right? Right. So what Mr. Moody and his attorney have suggested is that you look at this Virginia Supreme Court case. I would submit that's totally inappropriate. It interprets another act. It doesn't even include the word disability in the Virginia Act. But the Virginia Act is important for this purpose. You don't even. There is no economic analysis under the Virginia Act. There's no analysis of your wage earning capacity. You can be completely retired, no intention to ever return to work, not have worked for 20 years. The doctor takes you out of work for two weeks. You're paid. That's the end of the inquiry. There's no analysis of the economic component of your wage earning capacity. That's the difference. If you take this out by logical extension, you could have somebody who quits and says, I'm going to play the lottery from here on out. I don't want to work. Does he quit after the injury? Say he's working suitable alternate employment. He says, I'm tired of working. When's the injury? That's the key. During work. During work. During work. No question that this is a work-related injury. This is a compensable work injury. Right. 20 years later, after never working again, no intention of working, collecting his lottery winnings, he goes to the doctor and says, you know, my knee's been bothering me. I'd like to have surgery. Well, that gets to my point that that loss is probably not caused by his injury. It's not part of his injury. We agreed at the outset of this argument that this operation was linked to his injury. That's correct. And the incapacity is it could have been right at the time of injury or after. It's like a back injury. Sometimes it's delayed. Sometimes it's there. But it's causation. There's no issue on causation for this judge. No issue. So the 20-year hypothetical raises serious questions. But even if we assume that that's related, that person is now going to step forward and say, even though I haven't worked in 20 years, I have no intention of working, I have not made any effort to get well. I would say he was not incapacitated because of his injury 20 years earlier unless you had some mighty powerful evidence. I'm sure Mr. Kline could find someone to say that. How about these football players that are getting hit in the head and finding later on that that's a different issue? I don't believe they're covered by the Longshore Act. They're litigating that stuff, you know, the CTE, the brain damage, yeah. Can I ask you a question? Does the Longshoreman Act protect your job when you have a workers' comp claim? In other words, can you be fired for infraction on not doing your job independent of your? Sure. So you can be, right? Yeah, I mean, and that's the Brooks case. So what would happen if you fired him before he had his surgery? And you would say, well, you know, would you take the same position? No, no, you're not incapacitated because you're not working because you're fired and you can't get a job, you're not employed. I think the key determining factor would be, is the individual working in suitable alternate employment at the time of termination? Has the employer come forward and said, here's a job you can do, you can earn wages, and therefore you don't have a loss of wage earning capacity? If they are fired for some other reason, malfeasance, misfeasance, as the word in the Brooks decision, that's the reason for them not earning any wages moving forward. It's not because of their work injury. There's something has happened that's not related to the injury. And that's the point I'm trying to make here is, in this instance, just as in Brooks, and I would argue somewhat in Hoard, the issue is, is the employee doing something that's causing his employment to terminate, to change his wage earning capacity status? And I would submit that in this case, the voluntary retirement is that. I'm almost out of time. I just want to make one quick point. But you say he's doing something else. He's fired, but he is for two months incapacitated, post-surgery. But the only change in the hypothetical is that rather than a retiree, he's been fired. Well, just to respond to your question, Jeff, he's retired for some. Fired, fired. Fired. If he's fired for some reason unrelated to his injury. Right. Would that change? I don't think that would change the analysis. He still wouldn't be entitled to his two months of incapacity? If he's at the time he's fired, he's not working. Well, he's fired. He's working. Okay. So he's working. He's earning wages. And then he gets fired and he's not working. And then he's not working. He gets his operation. He gets his operation. You're saying that he can't get his two months of incapacity? That would be the analysis. If that's the analysis, then you could just deny you benefits by firing you almost for some other reason. Say, well, you know, you're not incapacitated because you have two months post-surgery. It's because I fired you for unrelated reason. Actually, make it more serious. He has the operation. And two days after the operation, they get the prognosis it's going to take two months. So then he fires him then. Now he's no longer working. And so you only give him two days' compensation and the other rest of the two months you don't. That's what you'd lead, right? I think there would have to be more facts to get some. No, the same facts. I'm saying this same case. He gets into his operation. He has the operation. Doctor says it's going to be two months. You're going to be totally disabled. And the employer says, I don't want to pay it, and fires him. I think in that instance, he is out of work at the time of the termination. So he's not working. No, he's terminated after he had the operation. He had the operation as a result of the injury. Right. And then he goes in, has the operation. He's still hired. He's still working. And he plans to come back. But the employer fires him two days after the operation. And under your argument, since he no longer has capacity to work because he was fired, that's your argument, that he doesn't get the one month and 28 days. I know I'm over my time, Judge. No, just answer that. You can answer that. That is a difficult question to answer. It's the same one Judge Gregory answered you with the fired. It's just a little more dramatic. You're saying he's working, but he's not working. If I'm listening to you, he's not actually going to work every day and earning wages. He's still employed, but he's not going to work because he's been taken out of work for the surgery at the time he is fired, is my understanding from the hypothetical you're talking about. Yeah, that's right. I think in those circumstances, the employer doesn't get to rely on, there is suitable alternate employment at the time that you're terminated. He's already totally disabled at the time he's terminated. I know, but he needs to get compensated. I think in those circumstances, he would until the period of total disability ended. That's the best I can do with those facts, Judge. The only thing I would say about Mr. Klein talked about Hort, and I just want to talk about this briefly. In Hort, this court ruled that this lady who was laid off was not working suitable alternate employment and that the employer had not established that. That is the key distinction in Hort as to why it's different from Brooks and this case. That's one reason. The second reason is in Hort, you have a lady who's ready, willing, and able to work, but she's laid off. There's a factual distinction. In this case, we have a gentleman who says, I quit. I don't want to work anymore, and he stops working, and he has no intention of working again. But that didn't affect his injury. That didn't heal his injury or make it worse? That's correct, Judge. And the injury occurred while during work, and it was measured by the two months by the necessary operation? All of those are absolutely true, Judge. I understand. In closing, I would simply say that I would urge you to follow the Board's reasoning as to why there is no loss of wage earning capacity, but you can't be more than 100% disabled. If you follow the reasoning, if his wage earning capacity, based on what the Board's analysis is, which I would submit is correct, and you're not earning anything and you're not going to earn anything, how do we compensate those people for loss of wage earning capacity when they're already at zero? That's my argument. Thank you. Mr. Kline, you have a few minutes. I'd like to mention just a couple of things in response. First, the Board painted with a broad brush and simply said, claimant's retirement had already resulted in his complete loss of earning capacity. No, it didn't. It resulted in his loss of current earnings because he retired. He had the capacity to work. So the Board's broad brush here, number one, is simply wrong on the definition of disability under the Act. And number two, it's going to reach, Judge Agee, all the people you asked about. Somebody who retires from the shipyard and goes to work over here and then has to have the surgery is losing their wages from their new job. But under the Board's rule, tough luck. They already became no earning capacity when they retired from the shipyard in the first place, so they won't get paid for losing wages in the second job during the clearly related time out of work for shoulder surgery. Secondly, it would be useful, I think, to look at McKellar, which looked at the state law, and see the definition which the state law worked from, 65.2-500A. When the incapacity for work resulting from the injury is total, the employer shall pay weekly compensation. Again, it was looking at incapacity. And here today, under the Longshore Act, we're to look at incapacity. When we do that, then this Court, I think, has a handle on the arguments and understands that Mr. Moody should have been paid temporary total disability during his period of inability to work because of the shoulder surgery. Thank you. Thank you so much. We'll ask the Clerk to adjourn the Court for the day, and we'll come to an agreed counsel. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Roger L. Gregory, Paul V. Niemeyer, G. Steven Agee